CARLTON *v.* UNION BANKING CO.

1. EVIDENCE—ADMISSIONS—BILLS AND NOTES—MINUTES OF MEETING OF BANK DIRECTORS.

In suit by maker of alleged accommodation note, then director of payee bank, for reimbursement from payee, its assignee and others for judgment obtained against plaintiff by assignee, liquidating agent of payee, minutes of meeting of payee's board of directors, held about a year after note was given and after note was assigned and payee had gone into liquidation but before action on note by assignee, which recited it was an accommodation note and deficiency between value of security and face value should be charged to the liquidating fund of payee *held*, to constitute competent evidence as an admission merely.

2. BILLS AND NOTES—CONSIDERATION—ACCOMMODATION—FINDING OF COURT.

Finding of trial court that consideration was given for note to bank, alleged by maker to have been an accommodation note, *held*, supported by record.

3. JUDGMENT—RES JUDICATA.

Judgment against bank director, maker of note given bank and assigned by it to liquidating agent which in turn sued maker, *held, res judicata* of issue, as between parties to such action, as to maker's liability on such note in his suit for reimbursement brought in equity against such assignee and payee and others, on theory note was given for accommodation of payee and was not supported by consideration.

4. APPEAL AND ERROR—QUESTIONS REVIEWABLE.
In suit in equity by bank director for reimbursement for judg-
ment obtained against him on note questions as to estoppel by
conduct, whether or not he is in court with clean hands and
possibility of using nonnegotiable instrument as accommoda-
tion note are not reviewed where cause is disposed of adversely
to plaintiff on issues of *res judicata* and consideration.

Appeal from Berrien; Warner (Glenn E.), J.,
presiding. Submitted June 2, 1936. (Docket
No. 20, Calendar No. 38,876.) Decided October 5,
1936.

Bill by Arthur Carlton against Union Banking
Company, a Michigan banking corporation, W. R.
Payne, receiver of the Commercial National Bank &
Trust Company, a Federal banking corporation, and
others for reimbursement for sums paid on a judg-
ment, an injunction and other relief. Bill dismissed.
Plaintiff appeals. Affirmed.

*Arthur E. Leckner* and *Charles W. Gore,* for plain-
tiff.

*Stratton & Evans* (*Francis J. Miller,* of counsel),
for defendant Union Banking Company.

*Ross H. Lamb,* for defendant Payne.

*Gore, Harvey & Fisher,* for defendants Merrill,
Benning and Burkhard.

NORTH, C. J.  In this suit, originally started as a
suit at law but later transferred, by stipulation, to
equity, plaintiff seeks reimbursement from defend-
ants for upwards of $16,000 paid by him in satisfac-
tion of a judgment obtained against him by the
Commercial National Bank & Trust Company.  This
judgment was obtained upon plaintiff's note given
to the defendant Union Banking Company and as-

signed by it to the Commercial National Bank & Trust Company. It is plaintiff's claim that the note was merely an accommodation note given without consideration. Decree was entered in the circuit court dismissing plaintiff's bill of complaint and he has appealed.

In 1929 the Union Banking Company, a Michigan banking corporation, doing business in St. Joseph, Michigan, accepted for discount three promissory notes, each in the sum of $5,000, signed by R. C. Crawford. As collateral there accompanied these notes 200 shares of the Irving Trust Company of New York in the form of "street certificates." The individual defendants Merrill, Benning and Burkhard each purchased from the bank one of these notes. But later the bank repurchased each of the notes. In the meantime the bank had retained possession of the Crawford notes and the collateral stock.

In February, 1930, the bank officials were anticipating an examination of the bank. The Crawford notes were past due and the collateral stock had depreciated in market value so that it was at least $2,500 below the aggregate of the notes. It is alleged in plaintiff's bill of complaint that there was some question as to the collectibility of the Crawford notes "and that for the best interest and the good of the Union Banking Company it was necessary that someone take up the past due paper and give to said bank a new note for the said indebtedness." Plaintiff was a director of the bank, secretary of the board of directors, and a member of the discount and auditing committees. The president and some of the directors of the bank prevailed upon plaintiff to give his nonnegotiable note to the bank for $15,350 for six months in lieu of the Crawford notes or, as appellees assert, as payment for the

purchase by plaintiff of the stock deposited as collateral to the Crawford notes. Plaintiff's note was approved by the discount committee; but plaintiff asserts it was then understood to be only an accommodation note and that shortly after plaintiff gave his note the bank president was to go to Chicago and endeavor to secure further collateral for the Crawford notes or a reduction of the indebtedness by partial payment. This appears not to have been accomplished. In March, 1930, the bank examiner criticized plaintiff's $15,350 note as an overloan and required the bank directors to extend to plaintiff an additional line of credit if the bank was to continue to hold plaintiff's note. At the May meeting of the board, attended by plaintiff, such action was taken. Prior to this the bank cashier, with authority from the bank president, wrote to plaintiff the letter quoted below. But appellees claim, and the record seems to support this claim, that the other directors did not authorize and were not aware of the writing of this letter.

"February 19, 1930.
"ARTHUR CARLTON,
"City.
"*Dear Sir:*
"This will acknowledge receipt of your note of $15,350 and which this bank accepts without any liability on your part and inasmuch as it is an accommodation in taking up three $5,000 notes of R. C. Crawford against which we hold 200 shares of Irving Trust Company of New York as collateral.
"Youry truly,
"HARRY A. JOHNSON,
"Cashier."

It appears from plaintiff's testimony that when he was about to advise the others present at a directors' meeting of the character of his note the

bank president shook his head at plaintiff and the latter was deterred from making his statement to the other directors.

On May 23, 1930, the Union Banking Company sold and assigned certain of its commercial papers to the Commercial National Bank & Trust Company and received therefor $51,000. This sale and assignment included plaintiff's note, and the assignment contained the following:

"The Arthur Carlton note has collateral attached consisting of 200 shares Irving Trust Company. Certificates Nos. 24,840–24,839."

Plaintiff's note was not paid at maturity and thereupon the assignee brought suit and recovered judgment against plaintiff on June 4, 1931. Plaintiff satisfied the judgment rendered against him by paying part in cash and giving his note for the balance. When suit was brought by the Commercial bank against Mr. Carlton he notified the Union Banking Company and authorized it to appear and defend, but the bank did not do so. In his defense Mr. Carlton pleaded and unsuccessfully urged that the note on which suit was brought was a nonnegotiable accommodation note, given without consideration, and that the Commercial National Bank & Trust Company was not a holder in due course. Prior to the suit by the assignee on plaintiff's note, and on February 9, 1931, the following entry was made in the minutes of a meeting of the directors of the Union Banking Company:

"The matter of the accommodation note given by Mr. Carlton to the Union Bank was discussed, and it was the sense of the meeting that any deficiency between the value of the security and the face of his accommodation note should be charged to the liquidating fund of the Union bank."

These minutes were signed by five of the bank's directors, including plaintiff, and defendants Merrill and Benning. This belated action really amounted only to expressing a desire that the bank, rather than plaintiff, should bear the apparent loss incident to the Crawford transaction. The recital in the minutes constituted competent evidence as an admission, but it could not change the nature of the prior transaction in connection with which plaintiff had given his note to the Union bank.

Plaintiff contends that he had no knowledge of his note having been sold by the Union bank to the Commercial bank until after its maturity when he was notified and demand of payment was made by the Commercial bank. Because of this circumstance, as well as its general bearing upon the case, the further statement of facts is material. Shortly following the assignment of plaintiff's note (May 23, 1930) to the Commercial bank, and on June 21, 1930, the Union bank entered into a liquidating contract with the Commercial bank whereby all of the assets of the former were transferred to the latter which undertook to pay the scheduled liabilities of the Union bank. Plaintiff, both as a director and as a stockholder of the Union bank, actively participated in this transfer of its assets; and this transaction occurred prior to the maturity of his note. Plaintiff must have known that his note had passed with other assets of the Union bank. On the 24th day of September 1931, the Commercial National Bank & Trust Company suspended operation and defendant W. R. Payne was appointed receiver. In plaintiff's brief it is stated: "Mr. Payne is joined as a defendant because he has custody and control of all the assets of the Union Banking Company."

As stated above, it is plaintiff's claim that his note was purely an accommodation note without consideration and, therefore, he is entitled at least to a judgment against the Union Banking Company. On the other hand, defendants contend that at the time plaintiff's note was given the Union Banking Company in fact sold to plaintiff the Irving Trust Company stock which it held as collateral with the Crawford notes, that thereupon the Crawford notes were considered paid although they were still held in the possession of the bank, and that this sale of the Irving Trust Company stock to plaintiff constituted a valid consideration for his note. It is also asserted by defendants that there was a further consideration for plaintiff's note in that it improved the condition of the assets of the Union Banking Company and thereby protected and increased the value of plaintiff's stock holdings in the bank. The circuit judge found there was consideration for the note in accordance with the first of the defendants' two contentions above noted. If this finding is sustained by the testimony, decree entered in the circuit must be affirmed.

There are many conflicting circumstances disclosed by this record, some of which tend rather convincingly to sustain plaintiff's contention that his note was simply given for the accommodation of the Union Banking Company; but on the other hand the record discloses other facts and circumstances which it is quite impossible to reconcile with any other theory except that plaintiff knowingly purchased the Irving Trust Company stock, which was deposited as collateral with the Crawford paper, at the time plaintiff gave the note in question. We cite some of these facts and circumstances: Plaintiff's note to the Union bank provided that he deposit the

Irving Trust Company stock as collateral with his note and the conditions under which such collateral might be sold in case of default. Shortly after he gave his note the Union Banking Company surrendered the certificates for the Irving Trust Company stock, which certificates were in street form, and secured therefor new registered certificates issued in plaintiff's name. These certificates in turn were indorsed in blank by plaintiff and left in the possession of the Union Banking Company as collateral to his note. Subsequently dividends were declared by the Irving Trust Company payable to plaintiff, and by him turned over to the bank to be applied on his note. Again when plaintiff later gave his note in partial settlement of the judgment which the Commercial bank secured against him, he put up the Irving Trust Company stock as collateral to this note. It is highly incredible that a man of plaintiff's business experience would have pledged as collateral stock in which he had and claimed no right or ownership. Plaintiff's note was payable six months from its date. This fact together with other details of the transaction do not harmonize with plaintiff's claim that his note to the Union bank was given as an accommodation for only a few days during which the bank president was to go to Chicago and endeavor to straighten out the Crawford loan. Plaintiff admits he did not make inquiry of the bank president or otherwise concern himself with any subsequent developments relating to these Crawford notes.

We are mindful that plaintiff points out as absurd the claim that he purchased this stock for the amount of his note at a time when he knew the market value of the stock was substantially less than the face of his note. But in this connection appellees stress in their brief that Mr. Tebbe, president of

the Union Banking Company, at the time he was soliciting plaintiff's note, and possibly other directors of the bank, asserted the possibility of a rise in the market value of this stock and a subsequent profit to the one who purchased it. Doubtless the fair inference from the record is that plaintiff was induced to give his note both because of his desire to improve the condition of the bank's assets in advance of the visit of the bank examiner, and also because of his desire, under the circumstances, to take advantage of the possibility of reaping a profit incident to the purchase of the Irving Trust Company stock.

Careful consideration of this record brings the conclusion that the trial judge was right in holding that there was consideration for plaintiff's note to the Union Banking Company. This being true, plaintiff is not entitled to recover against any of the defendants; and it becomes unnecessary to outline the theory of his claim against the individual defendants. It is also obvious that the judgment obtained against plaintiff in the former suit of the Commercial National Bank & Trust Company on the same note is *res judicata* of that issue as between plaintiff and the Commercial bank. Because of the conclusion reached we pass appellees' contention that plaintiff is estopped by his course of conduct from obtaining a decree herein, and further that he is not in court with clean hands and therefore not entitled to equitable relief. Nor will we discuss the interesting academic question as to the possibility of using a nonnegotiable instrument as an accommodation note.

The decree entered in the circuit court is affirmed, with costs to appellees.

FEAD, WIEST, BUTZEL, BUSHNELL, SHARPE, and TOY, JJ., concurred. POTTER, J., did not sit.